IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JAMES WESLEY DILLARD,
ADC #116862                                                                                           PLAINTIFF

V.                                       CASE NO. 3:18-CV-47-BD

DAVID CARTER, et al.                                                                                  DEFENDANTS

## ORDER

### I. Background

James Wesley Dillard is currently an Arkansas Department of Correction ("ADC") inmate. He filed this lawsuit claiming that the Greene County officials violated his constitutional rights while he was detained at the Greene County Detention Center ("Detention Center"). (Docket entry #2) Because Mr. Dillard included multiple, unrelated claims in his original complaint, the Court required him to file an amended complaint that included only related claims. (#6) Mr. Dillard elected to proceed with deliberate-indifference claims against Defendants Bagwell and Huggins. The remaining claims that were unrelated to his medical treatment were dismissed, without prejudice. (#21)

On September 4, 2018 and again on September 17, 2018, Mr. Dillard moved for summary judgment on his deliberate-indifference claims. (#45, #47) Defendants Bagwell and Huggins filed a cross-motion for summary judgment on December 3, 2018. (#52) Mr. Dillard has responded to the Defendants' motion, and all motions are now ripe for decision. (#56, #57)

## II.  Discussion

   A. Standard

In a summary judgment, the Court rules on the case without a trial. A party is entitled to summary judgment if—but only if—the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56 and *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

   B. Undisputed Medical History

Mr. Dillard suffers from epilepsy. According to his medical records, prior to his incarceration at the Detention Center, he was sometimes prescribed Dilantin and sometimes prescribed Keppra to control his seizures.

During Mr. Dillard's January 16, 2017 appointment with Dr. Roland Hollis, his primary care physician, Dr. Hollis noted that Mr. Dillard had "quit taking" his Keppra and was "off all meds." (#52-1 at p.1) Dr. Hollis prescribed Mr. Dillard 100 milligrams of Dilantin to be taken "qid" (four times daily). He recommended that Mr. Dillard be examined by a neurologist. (*Id.*)

Mr. Dillard's medical records indicate that his Dilantin level was above the therapeutic level on January 23, 2017. (*Id.* at p.2) On July 28, 2017, less than two weeks before Mr. Dillard was incarcerated, Dr. Hollis examined Mr. Dillard and noted that he was "off meds?" and that he had reported having a grand mal seizure on July 4. (*Id.* at p.3) Dr. Hollis prescribed Keflex (an antibiotic) and Diflucan (an antifungal medication). (*Id.* at p.4)

On August 1, 2017, Mr. Dillard was taken into custody at the Detention Center. At booking, a medical intake form was completed for Mr. Dillard. (*Id.* at p.5) Based on the notes on the form, Mr. Dillard reported that he had stopped taking Dilantin. (*Id.*) On August 1 and 4, Mr. Dillard signed medical release forms so that his medical records could be obtained from Dr. Hollis. (*Id.* at pp.8-9)

On August 3, Mr. Dillard submitted a medical request form requesting to be assigned to a bottom bunk. (*Id.* at p.12) In his request, Mr. Dillard explained that he suffered from epilepsy and that his family was in the process of trying to obtain his medication. (*Id.*)

The following day, LPN Johnson (not a party to this lawsuit) responded that suffering from a seizure disorder "will only get you put in a medical cell up front in booking. It will not get you bottom bunk." (*Id.*) In addition, Mr. Dillard was instructed to sign a "Release of Information" to be sent to his physician to confirm his diagnosis. (*Id.*)

On August 23, 2017, Defendant Bagwell examined Mr. Dillard and noted his complaints of seizures. (*Id.* at p.16) She ordered Dilantin and Risperdal for Mr. Dillard. (*Id.* at p.17)

On September 12, Mr. Dillard submitted a medical request form complaining of the side-effects of Risperdal. (*Id.* at p.21) Defendant Huggins responded the same day and agreed to speak to the provider about stopping the medication. From September 13 through September 18, Mr. Dillard refused to take Risperdal. (*Id.* at pp.22-32)

According to the medical records, on September 17, LPN Johnson examined Mr. Dillard after he fell and struck his head as a result of uncontrollable shaking.[1] (*Id*. at p.29) Ms. Johnson's notes indicate that she planned to speak to a provider and that she provided Mr. Dillard ibuprofen. (*Id*. at pp.29-30)

Mr. Dillard's medical records also indicate that he suffered a seizure in his cell on September 17. (*Id*. at p.31) The following day, LPN Johnson noted that she had spoken to Defendant Bagwell about Mr. Dillard's medical issues. (*Id*. at p.29) Defendant Bagwell ordered Mr. Dillard to stay in a medical observation cell and to have his Dilantin levels monitored.

On September 19, Mr. Dillard's Dilantin blood was drawn to determine his Dilantin level. (*Id*. at p.35) On September 20, Defendant Bagwell signed off on the results of that test, which showed that Mr. Dillard's Dilantin level was "out of range." (*Id*. at p.35) Defendant Bagwell issued an order to stop the Dilantin prescription (due to his elevated levels) and to replace it with Lamictal. (*Id*. at pp.29, 37, 42)

On the same date, Mr. Dillard again refused to take his Risperdal. (*Id*. at p.36) From September 21 through September 23, Mr. Dillard refused all medication, indicating that he would only take Dilantin. (*Id*. at pp.38-41) On September 23, Defendant Bagwell entered an order discontinuing the Lamictal because Mr. Dillard refused to take it. (*Id*. at p.37)

---

[1] Defendants state that Defendant Huggins examined Mr. Dillard on September 17. (#54 at p.3) According to Mr. Dillard's medical records, however, it appears that by LPN Johnson saw him on that date. Regardless, this inconsistency is not material in addressing the pending motions.

On October 1, a Detention Center officer reported that Mr. Dillard had experienced a seizure in his cell. (*Id*. at p.45) On the same date, Defendant Bagwell ordered that Mr. Dillard be provided Keppra. (*Id*.)

On October 3, Mr. Dillard again refused to take his medication. (*Id*. at p.48) On the same day, Defendant Bagwell ordered a prescription for Lamictal for him. (*Id*. at p.46)

On October 12, Mr. Dillard signed a release to be transferred to the ADC. (*Id*. at p.52) On October 26, he submitted a medical request form for seizure medication. (*Id*. at p.55) Defendant Huggins responded that Mr. Dillard had been prescribed Lamictal and that it "will not be stopped." (*Id*.) On the same date, Mr. Dillard signed another release to be transferred to the ADC. (*Id*. at p.56)

Based on Mr. Dillard's medical records, it is unclear exactly when he was transferred to the ADC. He filed a medical request form on November 1, 2017, but he did not file any other medical request forms regarding his need for seizure medication.

On December 7, 2017, Mr. Dillard was again taken into custody at the Detention Center. (*Id*. at pp.58-61) At that time, he stated that he had two prescriptions for Lamictal. (*Id*. at p.61)

C. Deliberate Indifference

A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Deliberate indifference" is evidenced, however, only when "the official knows of and disregards an excessive risk to inmate health or safety; the official

5

must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837. Moreover, mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

Negligence, even gross negligence, is insufficient to establish liability. *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Fourte*, 746 F.3d at 389). Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). See also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

Here, Mr. Dillard complains that he was not provided Dilantin to treat his seizure disorder while he was in the Detention Center. He alleges that he suffered four grand mal seizures when he was denied medication.

The records show that Mr. Dillard had some lapses in receiving medication. But, but the undisputed medical records show that the Defendants stopped administering Dilantin to Mr. Dillard after testing showed that his Dilantin level was too high.

6

Furthermore, they stopped giving him Risperdal and Lamictal after he consistently refused to take the medication provided.

Notably, Mr. Dillard had stopped taking Dilantin prior to his incarceration at the Detention Center, and Dr. Hollis had not prescribed Dilantin for him at his July 28, 2017 appointment. Although Mr. Dillard plainly preferred taking Dilantin over other medications Defendants provided, as noted, the mere disagreement in treatment fails to rise to a constitutional level.

Based on this evidence, the Court can hardly conclude that either Defendant Bagwell or Huggins refused to provide Mr. Dillard essential care or acted with anything close to criminal recklessness. Rather, both Defendants readily responded to Mr. Dillard's medical needs and attempted to assist him by adjusting his medication and moving him to an observation cell. Mr. Dillard was obviously not pleased with the care the Defendants provided, but his subjective opinion fails to create a genuine issue of material fact.

## III. Conclusion

Based on the undisputed evidence, including Mr. Dillard's medical records, the Defendants' motion for summary judgment (#52) is GRANTED. Mr. Dillard's motions for summary judgment (#45, #47) are DENIED, as moot.

IT IS SO ORDERED, this 17th day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE